## STATE OF CONNECTICUT *v.* JASON MANN
### (AC 22402)

Lavery, C. J., and Schaller and Bishop, Js.

Argued September 17, 2002—officially released April 1, 2003

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Michael T. Morley*, law student intern, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Maura K. Coyne*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Jason Mann, appeals from the judgment of conviction, rendered after a trial to the court, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of a controlled substance in violation of General Statutes § 21a-279 (c) and possession of a narcotic

substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the court improperly denied his motion to suppress the crack cocaine and marijuana seized from a search of his person during a warrantless police entry into his apartment[1] in violation of his fourth amendment rights.[2] We agree and reverse the judgment of the trial court.

The following facts are not disputed. At approximately 4:25 a.m. on October 3, 2000, three uniformed New Haven police officers, Christopher Rubino, Julie Esposito and Victor Fuentes, responded to a call that a dispute was taking place on Stevens Street near Sylvan Avenue in New Haven. When the officers arrived in the area, they spoke to a woman who identified herself as Tina Jones. Jones admitted having been part of the dispute on Stevens Street and volunteered information about drug activity in the area. She told the officers that an apartment at 130 Sylvan Avenue had just received a shipment of drugs, that the recipient of the drugs was a black male, that "they dealt everything out of that apartment" and that she was unsure as to whether there were weapons in the apartment. Jones described the apartment as being on the first floor, last door on the left, when the building is entered from the rear.

After receiving the information from Jones, the officers proceeded to the apartment at 130 Sylvan Avenue.

---

[1] We note that although we refer to the apartment as being the defendant's, there was testimony before the court that several people were staying at the apartment, and that the defendant had been living there and paying rent for three to four weeks. The court found that the defendant had a legitimate expectation of privacy in the apartment, and that finding is not contested on appeal.

[2] The defendant also claims a violation of his rights under article first, § 7, of the Connecticut constitution. The defendant has not provided an independent analysis of his state constitutional claim. Accordingly, we do not address the claim. See *State* v. *Robinson*, 227 Conn. 711, 721, 631 A.2d 288 (1993); *State* v. *Williams*, 64 Conn. App. 512, 521 n.3, 781 A.2d 325, cert. granted on other grounds, 258 Conn. 911, 782 A.2d 1251 (2001).

They entered 130 Sylvan Avenue from the unlocked rear door. At approximately 5 a.m., Rubino knocked on the door of the apartment described by Jones. Although in uniform, the officers did not at anytime announce themselves as police. The defendant responded by opening the door one and one-half to two feet, which was wide enough for the defendant's entire body to be visible. Upon opening the door and seeing the police, the defendant attempted to close the door using his left hand and the left side of his body. Simultaneously, the defendant placed his right hand into his right pocket. When Rubino saw the defendant place his right hand in his pocket, he drew his gun, entered the apartment, placed the defendant against a wall and conducted what he described as "a *Terry* patdown" for weapons.[3] No weapons were found, but Rubino did, in conducting the patdown, determine that the defendant's right pants pocket "had a quantity of plastic baggies with little rocklike things in them," which Rubino identified as possible narcotics. After completing the patdown and assuring himself that the defendant had no weapons, Rubino reached into the defendant's right pocket and withdrew its contents, which included fifty small bags containing crack cocaine and four small bags containing marijuana. Thereafter, the defendant was arrested and charged with various offenses relating to his possession of the crack cocaine and the marijuana.

The defendant filed a motion to suppress the crack cocaine and the marijuana. After hearing evidence on the defendant's motion, the court issued an oral ruling denying the motion because it found that the exigent circumstances exception to the warrant requirement permitted the officers warrantless entry into the apartment. The court also found that the police had no probable cause with respect to the defendant, that the defendant had a legitimate expectation of privacy in

---

[3] See *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the apartment at 130 Sylvan Avenue and that normally, a warrant would have been required to justify the officers' entry.

The defendant was convicted of possession of a narcotic substance with intent to sell by a person who is not drug-dependent, possession of a controlled substance and possession of a narcotic substance with intent to sell within 1500 feet of a school. The court imposed a total effective sentence of twelve years imprisonment and five years probation. This appeal followed.

On appeal, the defendant claims that his motion to suppress was denied improperly. Specifically, the defendant argues that the court improperly determined that the exigent circumstances exception to the warrant requirement justified the officers' warrantless entry into his apartment.[4] We agree.

We first set forth our standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set

---

[4] The defendant made the following additional arguments in support of his claim that his motion to suppress was denied improperly: (1) the officers' unreasonable conduct in knocking at the apartment door at 5 o'clock in the morning, without announcing themselves, requires suppression of the evidence and (2) even if the officers were justified in patting down the defendant for weapons, they were not justified in removing the narcotics from his pocket. Because we agree with the defendant that the exigent circumstances exception to the warrant requirement did not justify the officers' entry into his apartment and find that argument to be dispositive, we do not address his other arguments. We also note that at oral argument, the defendant conceded that the officers' conduct in knocking on his door was not unlawful.

out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001); see also *State* v. *Smith*, 257 Conn. 216, 222, 777 A.2d 182 (2001).

We note first that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (Internal quotation marks omitted.) *Payton* v. *New York*, 445 U.S. 573, 585, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). Moreover "[t]he right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance." (Internal quotation marks omitted.) *State* v. *Brosnan*, 221 Conn. 788, 806–807, 608 A.2d 49 (1992), quoting *Johnson* v. *United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

"In *Payton* v. *New York*, supra, [445 U.S. 573] the United States Supreme Court reaffirmed the overarching significance, under the fourth amendment, of the sanctity of the home. . . . The court stated . . . The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: The right of the people to be secure in their . . . houses . . . shall not be violated. That language unequivocally establishes the proposition that [a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (Citations omitted; internal quotation marks omitted.) *State* v. *Brosnan*, supra, 221 Conn. 806, quoting *Payton* v. *New York*, supra, 589–90. The United States Supreme Court also made it clear that "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the

entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton* v. *New York*, supra, 590.

"It is [thus] a fundamental principle of search and seizure law that, in the absence of exigent circumstances and probable cause for arrest, a person's house may not be entered without a warrant, and that warrantless searches and seizures inside a house are presumptively unreasonable." *State* v. *Gant*, 231 Conn. 43, 63, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995), citing *Payton* v. *New York*, supra, 445 U.S. 586; see also *Kirk* v. *Louisiana*, 536 U.S. 635, 638, 122 S. Ct. 2458, 153 L. Ed. 2d 599 (2002).

In the present case, it is undisputed that Rubino, upon observing the defendant reach his hand into his pocket while attempting to close the door, pushed the defendant further inside the apartment and against an interior wall. Rubino thus crossed the threshold of the defendant's apartment and physically seized the defendant inside his apartment.[5] In its oral decision, the court concluded that the police did not, at any time, have probable cause to believe that the defendant had committed or was about to commit a crime.[6] The court also concluded, however, that the exigent circumstances exception to the warrant requirement justified the officers' entry into the defendant's apartment and, there-

---

[5] A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *Terry* v. *Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Florida* v. *Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991); see also *Gardiner* v. *Incorporated Village of Endicott*, 50 F.3d 151, 155 (2d Cir. 1995) (under fourth amendment, person seized by police "only if, under the circumstances, a reasonable person would have believed that he was not free to leave" [internal quotation marks omitted]).

[6] The court did determine that the defendant's action of reaching his hand into his pocket, while attempting to close his door, created a reasonable and articulable suspicion that the defendant was about to attempt an assault.

fore, it denied the defendant's motion to suppress. The court's conclusions are inconsistent because warrantless searches and seizures conducted under the exigent circumstances exception to the warrant requirement are constitutionally impermissible unless supported by probable cause. *United States* v. *Cresta*, 825 F.2d 538, 553 (1st Cir. 1987), cert. denied sub nom. *Impemba* v. *United States*, 486 U.S. 1042, 108 S. Ct. 2033, 100 L. Ed. 2d 618 (1988); see also *Kirk* v. *Louisiana*, supra, 536 U.S. 638; *State* v. *Gant*, supra, 231 Conn. 63–64.

Because it is undisputed that the officers did not have probable cause with respect to the defendant,[7] we conclude that the exigent circumstances exception to the warrant requirement is inapplicable to the present case and did not justify the officers' entry into the defendant's apartment. The state, nevertheless, contends that the officers' warrantless entry into the defendant's apartment and subsequent patdown of the defendant were permissible because (1) pursuant to *United States* v. *Santana*, 427 U.S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976), and its progeny, the officers' actions were justified as a patdown for weapons pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and (2) the emergency doctrine justified the officers' entry into the defendant's apartment. We discuss those arguments in turn.

The state first contends that the officers' actions were justified as a *Terry*-style patdown for weapons under

---

[7] At oral argument before this court, the state conceded that the officers did not have probable cause when it stated: "The state has never argued that even if there were the imaginary magistrate out in the hallway to talk to that we would have been able to establish that there was probable cause or obtain a warrant. That has never been the state's argument here." The state further stated that "[w]e have said from the outset that no warrant is possible in this case" and that "we could not have obtained a warrant if we wanted to."

*United States* v. *Santana,* supra, 427 U.S. 38, and its progeny. Specifically, the state in its brief contends that *Santana* and *State* v. *Santiago,* 224 Conn. 494, 619 A.2d 1132 (1993), support its position that "a person may be subjected to a patdown for weapons when they voluntarily open their apartment door, in response to a knock thereon, and expose themselves to public view," provided that the requirements of *Terry* v. *Ohio,* supra, 392 U.S. 1, are satisfied; that is, that the "police have a reasonable and articulable suspicion that criminal activity is afoot."

In *United States* v. *Santana,* supra, 427 U.S. 38, the police, with probable cause but without a warrant, drove to within fifteen feet of the defendant's home. Id., 40, 42. The defendant was standing in the doorway of her house when the police arrived.[8] Id., 40. The police exited their van, shouting, "[P]olice," and displaying identification. Id. As the police approached, the defendant retreated into the vestibule of her home. Id. The police followed her through the open door and arrested her inside her home. Id. In determining that Santana's arrest was proper and did not violate her fourth amendment rights, the court held that (1) when the police officers first sought to arrest the defendant, she was in a public place[9] and (2) the officers' entry into her home, to complete the arrest, was proper under the "hot pursuit" exception to the warrant requirement.[10] Id., 42–43.

---

[8] The defendant in *Santana* "was standing directly in the doorway—one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *United States* v. *Santana,* supra, 427 U.S. 40 n.1.

[9] Prior to *Santana,* the United States Supreme Court held in *United States* v. *Watson,* 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976), "that the warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment." *United States* v. *Santana,* supra, 427 U.S. 42.

[10] The term "hot pursuit is only one of several well-established examples of 'exigent circumstances' that make it reasonable for the police to enter without obtaining a search warrant." *Joyce* v. *Tewksbury,* 112 F.3d 19, 22 (1st Cir. 1997); *United States* v. *Crespo,* 834 F.2d 267, 271 (2d Cir. 1987), cert. denied, 485 U.S. 1007, 108 S. Ct. 1471, 99 L. Ed. 2d 700 (1988).

In reaching its conclusion that the defendant in *Santana* was in a public place when the officers first sought to arrest her, the court concluded that by standing in her doorway, the defendant was "as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house," and that she was thus "not in an area where she had any expectation of privacy." Id., 42. *Santana* thus has come to stand for a kind of doorway exception or principle whereby "a person standing in the doorway of a house is in a public place, and hence subject to arrest without a warrant permitting entry of the home." (Internal quotation marks omitted.) *Illinois* v. *McArthur*, 531 U.S. 326, 335, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001); see also *LaLonde* v. *County of Riverside*, 204 F.3d 947, 955 (9th Cir. 2000).

Although the state does not articulate its argument, the heart of its claim is that *United States* v. *Santana*, supra, 427 U.S. 38, applies to this case and that the patdown of the defendant, therefore, was conducted lawfully in a "public place."[11] The state would have us believe that because the defendant voluntarily opened his door in response to a knock by the police and thus "exposed himself to public view," he was in a public place when the officers seized him and performed a *Terry* patdown for weapons. For us to agree with the state, we would have to conclude not only that *Santana* is applicable to this case, but also that the officers had

[11] One of the issues raised by the state's argument is whether the *Santana* principle can be applicable to *Terry*-style seizures supported only by reasonable suspicion, or whether the principle applies only to arrests, supported by probable cause. The state cites *United States* v. *Gori*, 230 F.3d 44 (2d Cir. 2000), cert. denied sub nom. *Pichardo* v. *United States*, 534 U.S. 824, 122 S. Ct. 62, 151 L. Ed. 2d 29 (2001), for the proposition that *Santana* extends to situations where the police have only a reasonable suspicion that criminal activity is afoot. We choose not to address that issue, however, because we conclude that *Santana* is inapplicable under the facts of this case.

a reasonable and articulable suspicion to believe that the defendant was about to commit a crime.[12]

In determining whether the *Santana* "doorway exception" applies in any given case, the key inquiry is whether the defendant has exhibited a legitimate expectation of privacy in the place where he is seized. See *United States* v. *Santana,* supra, 427 U.S. 42 (defendant's doorway held to be "public place" because by standing in doorway, "as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house," she was not in an area where she had exhibited any expectation of privacy); *Sparing* v. *Village of Olympia Fields,* 266 F.3d 684, 689 (7th Cir. 2001), cert. denied, 536 U.S. 958, 122 S. Ct. 2660, 153 L. Ed. 2d 835 (2002); *United States* v. *Gori,* 230 F.3d 44, 53 (2d Cir. 2000), cert. denied sub nom. *Pichardo* v. *United States,* 534 U.S. 824, 122 S. Ct. 62, 151 L. Ed. 2d 29 (2001); see also *State* v. *Santiago,* supra, 224 Conn. 501–502, 510 (*Borden, J.,* dissenting). That is because the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." (Internal quotation marks omitted.) *Minnesota* v. *Olson,* 495 U.S. 91, 95, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990). An expectation of privacy is legitimate "if the person concerned has exhibited an actual (subjective) expectation of privacy and the expectation is one that society is prepared to recognize as reasonable." (Internal quotation marks omitted.) *Hudson* v. *Palmer,* 468 U.S. 517, 525 n.7, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); see also *United States* v. *Knotts,* 460 U.S. 276, 280–81,

---

[12] Because we conclude that the facts of this case do not place it within *Santana* and its progeny, but instead place it squarely within *Payton's* proscription against warrantless entries into the home, we need not address the issue of whether the defendant's actions gave rise to a reasonable and articulable suspicion to believe that he was about to commit a crime.

103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983); *State* v. *Rodriguez,* 223 Conn. 127, 132, 613 A.2d 211 (1992).

"Following *Santana* and *Payton,* the federal and state courts have struggled with cases in which the police have made warrantless, probable cause arrests at the doorway of a defendant's home following the opening of the door by the defendant in response to a knock on the door by the police. The focus of the inquiry in these cases has been whether the principles of *Santana* or *Payton* apply—whether the arrest was in a public place in which the defendant had no reasonable expectation of privacy, or whether the arrest was made in the home, a place in which the defendant had the highest expectation of privacy.

"Not surprisingly, the cases have reached a variety of results, and break down along three principal lines. One line of cases holds generally that an arrest of the defendant at the doorway of the defendant's home (or hotel or motel room) is valid under *Santana,* irrespective of whether the defendant opened the door in response to a police summons (e.g., by knocking on the door) and irrespective of whether the defendant was precisely *on* the threshold or just inside it. . . .

"A second line of cases holds generally that what would otherwise be a valid doorway arrest under *Santana* may be rendered illegal under *Payton* because the defendant opened the doorway in response to coercive activity of the police outside, such as flooding the home with spotlights and calling to the defendant with bullhorns, or in response to deception, such as the police misrepresenting their identity when the defendant asked who was there before opening the door. . . .

"The third line of cases focuses both on whether the defendant opened the door in response to a summons by the police and on the defendant's conduct after opening the door. These cases hold generally that, if a defen-

dant opens the door in response to a police knock and acquiesces to the ensuing arrest, the arrest is valid under *Santana*, but that a defendant, by merely opening the door in response to a knock by the police, does not, without more, surrender a reasonable expectation of privacy in the home under *Payton*. See, e.g., *United States* v. *Berkowitz*, 927 F.2d 1376 (7th Cir. 1991) [cert. denied, 502 U.S. 845, 112 S. Ct. 141, 116 L. Ed. 2d 108 (1991)] . . . ." (Citations omitted; emphasis in original.) *State* v. *Santiago*, supra, 224 Conn. 508–10 (*Borden, J.*, dissenting).

We are persuaded that this third line of cases is most analogous to the present case because those cases focus on the defendant's reasonable expectation of privacy in light of his conduct after opening the door in response to a knock by the police. We therefore focus our inquiry on the defendant's reasonable expectation of privacy in light of his conduct after opening the door in response to the knock by the police.

In the present case, the defendant opened his door in response to the 5 a.m. knock of a police officer. Immediately upon seeing the officers at his door, the defendant attempted to close the door. "[T]here is no place where a person's expectation of privacy is greater than in his own home. . . . A person does not abandon this privacy interest in his home by opening his door from within to answer a knock. Answering a knock at the door is not an invitation to come in the house. We think society would recognize a person's right to choose to close his door on and exclude people he does not want within his home. This right to exclude is one of the most—if not the most—important components of a person's privacy expectation in his home." (Citation omitted.) *United States* v. *Berkowitz*, supra, 927 F.2d 1387; see also *United States* v. *Oaxaca*, 233 F.3d 1154, 1157 (9th Cir. 2000) (rejecting government's argument that "[law enforcement] agents did not need a warrant

because [the defendant] had left his door open, which exposed him to people outside" and stating that "the argument that anyone who is visible from the street implicitly invites the Government to enter his home not only deeply offends common sense, but flies in the face of well-established law"); *United States* v. *McCraw*, 920 F.2d 224, 228 (4th Cir. 1990) (person does not surrender expectation of privacy or consent to officers' entry by partially opening door to determine identity of officers knocking on door).

*State* v. *Santiago*, supra, 224 Conn. 496–97, does not require a different result. In that case, a police officer knocked on the defendant's door while investigating a complaint that the defendant had threatened a neighbor with a handgun. The defendant opened his door and stood directly in his doorway while speaking with the officer. Id., 497. Thereafter, the defendant consented to remain in his doorway while the officer consulted with his supervisor. Id., 497, 502. When the officer returned, the defendant was still standing in his doorway with the door wide open. Id., 497. The officer arrested the defendant for threatening and subsequently performed a search incident to the arrest. Id. Our Supreme Court, in upholding the validity of the defendant's arrest, concluded that the defendant "voluntarily relinquished any expectation of privacy at the time of his arrest" because, essentially, he consented to remain in his doorway and consented to be arrested.[13] Id., 502. The court stated: "Even in [*United States* v.] *Berkowitz*, [supra, 927 F.2d 1376] the court held that the defendant would be deemed to have acquiesced in his arrest if he had not attempted to question his arrest, or to close the door,

[13] In reaching its conclusion, our Supreme Court acknowledged that a split of authority exists as to whether a defendant surrenders his reasonable expectation of privacy in his home merely by opening his door in response to a knock by the police. *State* v. *Santiago*, supra, 224 Conn. 501–502. The court, however, expressly declined to reach that issue and instead based its conclusion on the defendant's acquiescence.

but had merely asked whether he might retrieve his coat from inside his home. . . . The manifestations of acquiescence on the present record are clear. Far from attempting to close his door, the defendant unconditionally agreed to the request of the police officer that he remain standing in his doorway . . . ." (Citation omitted.) *State* v. *Santiago*, supra, 502.

Unlike the situation in *Santiago*, in this case, there was no probable cause, the defendant did attempt to close the door and did not consent to speak to the police, to remain in his doorway or to be seized by the police. Instead, upon opening his door and seeing the police, he immediately attempted to shut the door. We conclude, under such circumstances, that the defendant did not surrender his expectation of privacy in his apartment and, therefore, that *Santana* is inapplicable.

Moreover, the state's reliance on *Santana* is misplaced because the case before us is not merely a "doorway case," where the police arrested (or otherwise seized) an individual who was standing in his open doorway. The defendant was inside his apartment when Rubino, upon observing the defendant reach into his pocket, entered the apartment and pushed the defendant against the interior wall behind the door. It is thus undisputed that the officers *entered* the apartment prior to seizing the defendant. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton* v. *New York*, supra, 445 U.S. 590.

The state has cited no case, and we have found none, that permits police officers physically to *enter* a defendant's home, under the principle of *Santana* prior to

an arrest.[14] The weight of the cases is to the contrary. See *LaLonde* v. *County of Riverside*, supra, 204 F.3d 955 (doorway exception did not apply because "arrest took place only after the officers had crossed the threshold of the door and entered [the defendant's] apartment"); *Adkisson* v. *Indiana*, 728 N.E.2d 175, 178 (Ind. App. 2000) (*Santana* not applicable where deputy crossed threshold and prevented defendant from closing door prior to informing her that his purpose was to place her under arrest); see also *New York* v. *Harris*, 495 U.S. 14, 15–17, 110 S. Ct. 1640, 109 L. Ed. 2d 13 (1990) (warrantless arrest after police entered home violated *Payton*); *Payton* v. *New York*, supra, 445 U.S. 578, 603 (arrest violative of fourth amendment where police, with probable cause but without warrant, entered defendant's home to arrest defendant after defendant's young son opened door in response to knock by police and police could see, from doorway, defendant sitting in bed); *Loria* v. *Gorman*, 306 F.3d 1271, 1286 (2d Cir. 2002) ("under the circumstances no reasonable officer could have concluded that—simply because [the defendant] was near the door—taking two steps into the house and seizing [the defendant] inside did not constitute a Fourth Amendment entry"); *United States* v. *Carrion*, 809 F.2d 1120, 1128 (5th Cir. 1987) (arrest not in violation of *Payton* warrant requirement because arrest effected before agents entered defendant's hotel room).

Even in *Santana,* the "doorway principle" did not justify the officers' entry into the defendant's house. Rather, the officers' entry was proper under the "hot pursuit" exception to the warrant requirement. If the doorway principle did not justify the police officers' entry into the *Santana* defendant's house, to complete

---

[14] That is to say, we have found no case that permits police officers to enter a suspect's home without the existence of some exception to the warrant requirement, such as exigent circumstances.

her arrest, it would defy logic to hold here that the *Santana* principle was applicable to justify the officers' entry into the defendant's apartment.

For the foregoing reasons, we conclude that *Santana* is inapplicable to the present case and that the police did not seize the defendant in a public place. Where, as here, the police clearly have violated *Payton*'s proscription of warrantless police entries into the home, *Santana* will not rectify unlawful police conduct by transforming the interior of a defendant's home into a "public place" for purposes of the fourth amendment.

The state in its brief also contends that the emergency doctrine justified the officers' entry into the defendant's apartment. The state asserts that "the terms 'exigent circumstances' and 'emergency doctrine' are often used interchangeably when discussing warrantless entries into a home" and suggests that it is the emergency doctrine rather than exigent circumstances that permitted the officers' warrantless entry into the defendant's apartment. The state argues in its brief that "the defendant created an emergency when he opened the apartment door, saw three uniformed police officers standing there and then immediately thrust his right hand into his pocket while trying to close the door with his other hand." The state asserts that the "emergency was the life threatening danger that the defendant posed to the police and others inside the apartment if he had a weapon in his pocket." We are not persuaded.

In *Mincey* v. *Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), the United States Supreme Court recognized that "the fourth amendment does not bar police officers, when responding to emergencies, from making warrantless entries into premises and warrantless searches when they reasonably believe that a person within is in need of immediate aid." (Internal quotation marks omitted.) *State* v. *Klauss*, 19 Conn.

App. 296, 300–301, 562 A.2d 558 (1989). In *State* v. *Geisler*, 222 Conn. 672, 693, 610 A.2d 1225 (1992), our Supreme Court set forth the standard of review for determining whether the emergency doctrine justifies a warrantless search. We review the "applicability of the emergency doctrine . . . de novo . . . based upon the subordinate facts found by the trial court, to determine whether an emergency existed that would justify the warrantless entry into the dwelling.

"Facts found by the trial court will not be disturbed unless the finding is clearly erroneous. . . . Conclusions drawn from those underlying facts must be legal and logical. . . . An appellate court reviews conclusions based upon subordinate facts found, even if labeled conclusions of fact, to the same extent that it reviews conclusions of law. . . . Because the issue of the warrantless entry into a person's home involves his or her constitutional rights, a reviewing court must examine the record thoroughly to determine whether the subordinate facts justify the trial court's conclusion that the officers' belief that an emergency existed was reasonable." (Citations omitted.) Id.

"The terms exigent circumstances and emergency doctrine are often used interchangeably when discussing warrantless entries into a home. The term exigent circumstances, however, generally refers to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization. . . . The emergency exception refers to another type of warrantless entry that evolves outside the context of a criminal investigation and does not involve probable cause as a prerequisite for the making of an arrest or the search for and seizure of evidence." (Citations omitted; internal quotation marks omitted.) *State*

v. *Hoth*, 50 Conn. App. 77, 82, 718 A.2d 28, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998).

"[T]here is a significant difference between a police entry for the purpose of making an arrest, or searching for evidence incident to a criminal investigation and an entry for the purpose of rendering aid or saving a human life." (Internal quotation marks omitted.) Id., 83. "[G]iven the rationale for this very limited exception, the state actors making the [entry] must have reason to believe that life or limb is in immediate jeopardy and that the intrusion is reasonably necessary to alleviate the threat." (Internal quotation marks omitted.) Id., 83–84. The test that we employ is "whether, under the totality of the circumstances, a well-trained police officer reasonably would have believed that a warrantless entry was necessary to *assist a person inside in need of immediate aid.*" (Emphasis added.) *State* v. *Klauss*, supra, 19 Conn. App. 302.

In the present case, there was no emergency. When the police officers knocked on the door of the defendant's apartment, they were not doing so because they had a reason to believe that anyone within the apartment was in immediate danger or in need of aid. Rather, they did so as part of an investigation. The state, however, argues that the defendant's act of reaching into his pocket created a life threatening emergency to people inside the apartment as well as to the police at his door. There is no evidence in the record to indicate that the officers ever had any reason to believe that any person inside the apartment was in jeopardy or in need of emergency aid. Given the fact that the police had no reason to believe that anyone inside the apartment was in immediate danger or in need of aid, the police were not justified in entering the defendant's apartment pursuant to the emergency exception. To the extent that the state argues that the emergency doctrine justified the officers' entry because the defendant's actions cre-

ated an "emergency" for the police, who were standing outside the defendant's apartment, we conclude that the emergency doctrine is inapplicable.

In summary, we conclude that the police officers violated the defendant's fourth amendment rights when they unlawfully entered his apartment without a warrant. Contrary to the state's argument, *United States* v. *Santana*, supra, 427 U.S. 38, is not applicable to this case, and the officers did not seize the defendant in a public place. Rather, the police unlawfully entered the defendant's home and seized him therein in direct violation of *Payton* v. *New York*, supra, 445 U.S. 573. Moreover, the emergency doctrine did not justify the officers' entry into the defendant's apartment without his consent, nor did the exigent circumstances exception to the warrant requirement justify that entry. Because the defendant was searched after an unlawful police entry into his apartment, the contraband seized from his person must be suppressed.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to suppress and for further proceedings in accordance with law.

In this opinion the other judges concurred.