STATE OF CONNECTICUT *v.* ERIC EDMAN
(AC 25033)

Schaller, Gruendel and Hennessy, Js.

Argued April 19—officially released August 23, 2005

*Hugh F. Keefe,* with whom was *Nancy A. Fitzpatrick,* for the appellant (defendant).

*Robert J. Scheinblum,* assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Kathleen E. McNamara,* senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The principal issue raised in this appeal is whether the trial court improperly denied a motion to suppress evidence seized from the defendant's home where the defendant asserted in his motion that the underlying search and seizure warrant had been issued by a magistrate[1] who was not neutral and detached as required by the fourth amendment to the United States constitution and article first, § 7, of the

---

[1] The term "magistrate," in this context, refers to a judicial officer authorized to issue warrants. In Connecticut, only judges of the Superior Court are authorized to issue warrants. See General Statutes § 54-33a.

constitution of Connecticut. Because we agree that, under the unique circumstances of this case, the issuing judge did not qualify as the neutral and detached magistrate guaranteed by the federal constitution, we reverse the judgment of the trial court.[2]

The record reveals the following undisputed facts and procedural history. On December 21, 2001, Judge William L. Wollenberg was presented with an affidavit for a search warrant of the residence of the defendant, Eric Edman. The affidavit detailed the circumstances from which law enforcement officials had concluded that there were narcotics at that location. Finding probable cause to support a search, Judge Wollenberg issued a search and seizure warrant. The next day, police officers executed the warrant at the defendant's residence, seizing illegal narcotics and controlled substances, including OxyContin and anabolic steroids. As a result of the search, the defendant was arrested and charged with numerous drug related offenses.

Before trial, the defendant filed a motion to suppress the seized evidence on the ground that "[t]he relationship between the defendant and . . . Judge Wollenberg . . . was such that a finding can not be made that the issuance of [the] search warrant was made by a neutral and detached magistrate."[3] At the February 21,

___

[2] The defendant claims that he is entitled to greater protection under our state constitution than under the federal constitution. See *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992). Because we conclude that the issuing judge was not neutral and detached for purposes of the federal constitution, we need not decide whether our state constitution affords greater protection under the specific facts of the present case. We note, however, that the search and seizure provision of our state constitution closely resembles the fourth amendment to the United States constitution, and that Connecticut has recognized the requirement that a warrant be issued by a neutral and detached magistrate since the Connecticut constitution of 1818 and even before. See *State* v. *Barton*, 219 Conn. 529, 538 n.4, 594 A.2d 917 (1991).

[3] The defendant also filed three other motions to suppress that are not at issue in his appeal.

2003 suppression hearing, the defendant advised the court that he intended to testify as to his relationship with Judge Wollenberg.[4] The court asked immediately to see counsel in chambers. Upon returning to the courtroom, the court stated: "[Defense counsel] had indicated he wanted testimony. We had some discussion regarding that. What the court would like to do is accept an affidavit in lieu of testimony. . . . And I will defer a decision on this particular motion until I have the affidavit in hand and we have an opportunity to then have oral argument based on the affidavit."

On March 21, 2003, the day the suppression hearing resumed, the defendant submitted a forty-one paragraph affidavit describing his relationship with Judge Wollenberg. In that affidavit, the defendant attested that he and Judge Wollenberg had met sometime in 1996 or 1997, while the defendant was working as a special deputy sheriff at the courthouse in Bristol, and that before issuing the search warrant in 2001, Judge Wollenberg had asked the defendant to help him move his office belongings on three occasions, stating on the last occasion that "he [did] not trust anyone else"; discussed with the defendant his "personal beliefs about whether he was satisfied in his overall role and the nature of his assignment" at the geographical area courthouse in New Britain and "whether he was given a sufficient caseload as a criminal judge by the presiding judge"; intervened on the defendant's behalf to prevent his transfer to another courthouse; endorsed the defendant's promotion to chief judicial marshal, a position that he ultimately attained; asked the defendant to

---

[4] There is nothing in the record to suggest that the defendant intended to call Judge Wollenberg to testify about his relationship with the defendant. "[T]o [have] warrant[ed] the extraordinary remedy of calling a Superior Court judge as a witness," the defendant would have had to have made a "sufficient preliminary showing of misconduct" on the part of the judge. *State* v. *Zarick*, 227 Conn. 207, 217, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993).

resign from that position (which he did) because of a prior criminal record, insisting that it was his only option, but assisted the defendant with that predicament by discussing with him the "details of [his] past conviction and possible defenses that could have been raised at that time," contacting the state board of pardons on his behalf and reviewing documentation he submitted to the board; discussed pending cases with the defendant, both in chambers and in court, even allowing him "to approach in open court . . . to converse with him about various dispositions and matters in front of the court"; asked the defendant, after a deputy marshal in the courthouse had been arrested, whether he knew if any sheriffs in the courthouse were breaking the law, and whether he would " 'look around and see what [he] could find' "; discussed personal issues with the defendant, including issues concerning the judge's family, finances, real estate investments, health concerns, influence in the state legislature, and opposition to "the judicial appointment of another judge . . . while he was on the judiciary committee"; played golf with the defendant on one occasion and sat at the same table as the defendant at various dinner receptions; and learned from the defendant two weeks before he issued the search warrant that the defendant "was considering filing a legal action against every individual that was involved with [his] having to give up [his] position, including any judge as a potential defendant." The defendant further attested that when the police executed the search warrant, they informed him that it was Judge Wollenberg who had signed the warrant and that he had been " 'sick to his stomach' " for having had to do so.[5]

After having reviewed the defendant's affidavit, the court denied the defendant's motion to suppress in an

---

[5] The state concedes that the court chose to accept the truth of the allegations in the defendant's affidavit.

oral decision. As to the defendant's relationship with Judge Wollenberg, the court stated that there was nothing unusual about the alleged contacts between the two, given that both were employed by the judicial branch and assigned to the same courthouse. "Conversations and contacts are common in such situations," the court explained, as is "a marshal assisting a judge in moving personal belongings from his or her chambers." Further, the court noted, "[m]uch of the more personal relationship which the defendant claim[ed] appears to have been initiated often and most often solely by the defendant."

As to Judge Wollenberg's neutrality and detachment, the court determined that there was nothing in the record to indicate that Judge Wollenberg had a vested interest in signing the warrant. In so doing, the court expressly rejected "the defendant's claim that Judge Wollenberg might have been trying 'to get the defendant' in light of the defendant's recent prior claim to sue all people, including Judge Wollenberg, in the matter regarding his failed promotion." Indeed, the court noted that "[t]he defendant, himself, claim[ed] that he sought advice from the judge on this very job situation" and that "[u]tilizing what [the defendant] calls a reasonable man standard, a reasonable man looking at impartiality might be forced to conclude, based on the defendant's assertions regarding his keen friendship with Judge Wollenberg, that the judge would be incapable of finding probable cause against the defendant." The court also determined that there was nothing in the record to indicate that Judge Wollenberg had lacked the requisite objectivity and impartiality in signing the warrant. Specifically, it stated: "Simply because the defendant and the issuing judge knew each other, spoke to each other, even were in social situations together and had extensive contacts and conversations does not provide grounds to sustain the defendant's claim raised in this

motion." In accord with its determinations, the court denied the defendant's motion to suppress.

The defendant thereafter entered a conditional plea of nolo contendere to one count of possession of narcotics in violation of General Statutes § 21a-279 (a) and three counts of possession of a controlled substance in violation of § 21a-279 (c), reserving the right to appeal from the denial of the motion to suppress. This appeal followed.

The defendant claims that the court should have suppressed evidence seized during the search of his residence because the search warrant was not issued by a neutral and detached magistrate as required by the fourth amendment to the United States constitution. We agree.

"We first set forth our standard of review. Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Mann*, 76 Conn. App. 48, 52–53, 818 A.2d 122 (2003), rev'd on other grounds, 271 Conn. 300, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005). The defendant challenges the court's legal conclusion that Judge Wollenberg qualified as a neutral and detached magistrate for purposes of the fourth amendment to the United States constitution.

The fourth amendment to the United States constitution[6] requires that "no warrants shall issue, but upon

---

[6] The fourth amendment to the United States constitution, made applicable to the states by virtue of the fourteenth amendment, provides: "The right

probable cause . . . ." Although not expressly stated, it also "requires that the determination of probable cause—the judgmental function of drawing inferences from evidence and deciding whether probable cause exists—be made by a neutral and detached magistrate." *United States* v. *Turner*, 558 F.2d 46, 50 (2d Cir. 1977); see also *Delaware* v. *Prouse*, 440 U.S. 648, 654 n.11, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The oft-quoted rationale for those requirements was delivered by Justice Jackson in *Johnson* v. *United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948): "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Id., 13–14. "It would appear, therefore, that a significant part of the protection which flows from the warrant process stems from the fact that the critical probable cause decision is being made . . . by a person possessing certain attributes and acting in a certain way." 2 W. LaFave, Search and Seizure (4th Ed. 2004) § 4.2, p. 483.

The United States Supreme Court has decided three seminal cases involving the attributes and conduct of persons who *do not* qualify as neutral and detached magistrates for purposes of the fourth amendment: *Coolidge* v. *New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Connally* v. *Georgia*, 429 U.S. 245, 97 S. Ct. 546, 50 L. Ed. 2d 444 (1977); and *Lo-Ji*

of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

*Sales, Inc.* v. *New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979). In *Coolidge*, the probable cause determination was made by the state attorney general, "who was actively in charge of the investigation and later was to be chief prosecutor at the trial." *Coolidge* v. *New Hampshire*, supra, 450. The state argued that the attorney general, who was authorized as a justice of the peace to issue warrants, had *in fact* acted as a neutral and detached magistrate. Id. According to the court, "there could hardly be a more appropriate setting than this for a *per se* rule of disqualification rather than a case-by-case evaluation of all the circumstances. . . . [T]he whole point of the basic rule so well expressed by Mr. Justice Jackson is that prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the 'competitive enterprise' that must rightly engage their single-minded attention." (Emphasis in original.) Id. The court held, therefore, that "the seizure and search . . . [could not] constitutionally rest upon the warrant issued by the state official who was the chief investigator and prosecutor in [the] case." Id., 453. In the present case, there is no indication that Judge Wollenberg had taken charge of the investigation in question or that he was engaged in any other law enforcement activity when he reviewed the affidavit for a search warrant of the defendant's residence.[7] As such, the holding in *Coolidge* does not inform our analysis of whether he was neutral and detached.

From the other two decisions, we glean that a magistrate's neutrality and detachment may be compromised in one of two ways—either (1) by his or her conduct or (2) by an indicia of partiality. In *Lo-Ji Sales, Inc.* v.

---

[7] Judge Wollenberg's purported effort to have the defendant look into possible illegal conduct by other sheriffs in the courthouse does not require a conclusion that the judge was engaged in law enforcement activity when he reviewed the affidavit for a search warrant of the defendant's residence.

*New York*, supra, 442 U.S. 319, it was the magistrate's conduct that created the appearance that he was not neutral and detached. In that case, a town justice issued a search warrant that authorized the search of an "adult" bookstore and the seizure of two specific "obscene" films. Id., 321. The warrant did not specify any other items to be seized, but authorized the seizure of any items that the town justice, himself, might find obscene upon examination at the bookstore. Id. The town justice then accompanied law enforcement officials to the store and directed the seizure of various items that he deemed obscene, items that subsequently were added to the original warrant. Id., 322–24. According to the court, "[t]he Town Justice did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." Id., 326. It explained: "We need not question the subjective belief of the Town Justice in the propriety of his actions, but the objective facts of record manifest an erosion of whatever neutral and detached posture existed at the outset. He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer." Id., 326–27. Hence, *Lo-Ji Sales, Inc.*, "demonstrates that a judicial officer, even if initially 'independent' of the law enforcement process, can lose that independence through his [or her] own actions." C. Whitebread & C. Slobogin, Criminal Procedure: An Analysis of Cases and Concepts (3d Ed. 1993) § 5.02, p. 140. Here, unlike in *Lo-Ji Sales, Inc.*, the claim is not that the magistrate engaged in conduct by which he abandoned the cloak of neutrality and detachment. Rather, it is that because of an indicia of partiality, he never possessed the requisite neutrality and detach-

ment in the first place—which takes us to *Connally* v. *Georgia*, supra, 429 U.S. 245.

In *Connally* v. *Georgia*, supra, 429 U.S. 246, a search warrant was issued by an unsalaried justice of the peace who was paid a $5 fee for each search warrant that he issued, but was paid nothing for each application that he reviewed and subsequently denied. The court held that the issuance of the search warrant under those circumstances violated the fourth amendment, stating: "His financial welfare . . . . is enhanced by positive action and is not enhanced by negative action. *The situation . . . is one which offers a possible temptation to the average man as a judge . . . or which might lead him not to hold the balance nice, clear and true between the State and the accused.* It is, in other words, another situation where the defendant is subjected to what surely is judicial action by an officer of a court who has a direct, personal, substantial, pecuniary interest in his conclusion to issue or to deny the warrant." (Emphasis added; internal quotation marks omitted.) Id., 250.

"Sometimes the claim is that the magistrate, while not having a financial interest in the case, had a sufficient *personal* interest that he cannot be deemed to have been impartial." (Emphasis added.) 2 W. LaFave, supra, § 4.2 (b), p. 488; see also *State* v. *Holloway*, 66 N.C. App. 491, 497, 311 S.E.2d 707 ("law recognizes that a magistrate may have such a personal interest in a case that the magistrate cannot be deemed to be impartial"), rev'd on other grounds, 311 N.C. 573, 319 S.E.2d 261 (1984). All the same, "[i]t is the quid pro quo—the issuing of a warrant in exchange for some benefit—that is important." *State* v. *Holloway*, supra, 497. As such, the "possible temptation" standard in *Connally* is applicable to a situation in which the magistrate has a sufficient personal interest in the case because such a situation "is one which offers a possible temptation to the aver-

age man as a judge . . . or which might lead him not to hold the balance nice, clear and true between the State and the accused." (Internal quotation marks omitted.) *Connally* v. *Georgia,* supra, 429 U.S. 250.

Such was the situation here. Indeed, the court determined as much when it stated in its oral decision that "[u]tilizing what [the defendant] calls a reasonable man standard, a reasonable man looking at impartiality might be forced to conclude, based on the defendant's assertions regarding his keen friendship with Judge Wollenberg, that the judge would be incapable of finding probable cause against the defendant." The state did likewise by stating in its brief that "if anything, based on the 'friendship' alleged in the affidavit, Judge Wollenberg would have had more of a *stake* in assuring either that the search warrant not issue or that it was valid and supported by ample probable cause." (Emphasis added.) By making those statements, the court and the state acknowledged that an inherent temptation existed for Judge Wollenberg to treat the case differently from any other case. Whether that temptation was to tip the scale in one direction or the other, the balance could not remain "nice, clear and true between the State and the accused." (Internal quotation marks omitted.) *Connally* v. *Georgia,* supra, 429 U.S. 250. Moreover, having what the state described as a "stake" in the matter cuts against the very grain of the fourth amendment notion of neutrality and detachment.

The state disagrees that Judge Wollenberg's personal interest in the case was sufficient to have deprived him of his status as a neutral and detached magistrate. In support thereof, it cites LaFave's treatise on search and seizure law for the proposition that it is right to reject a claim that a magistrate had such a personal interest in a case that he or she cannot be deemed to have been impartial "[w]hen [the claim is] based upon nothing more than the fact that the magistrate was previously

acquainted with the defendant and was aware of his criminal ways . . . ." 2 W. LaFave, supra, § 4.2 (b), p. 488. The state then cites four cases to bolster that proposition: *United States* v. *Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (magistrate neutral and detached despite having been criticized by defendant at defendant's seminar on living trusts for way magistrate handled probate case while in practice), cert. denied, 525 U.S. 1089, 119 S. Ct. 841, 142 L. Ed. 2d 696 (1999); *United States* v. *Czuprynski*, 46 F.3d 560, 564 (6th Cir. 1995) (en banc) (magistrate neutral and detached despite dispute he had with defendant thirteen years earlier); *United States* v. *Heffington*, 952 F.2d 275, 277–80 (9th Cir. 1991) (judge neutral and detached despite having been defense counsel in earlier case in which defendant was codefendant); and *State* v. *Mandravelis*, 114 N.H. 634, 636, 325 A.2d 794 (1974) (magistrate neutral and detached despite previously having represented defendant on numerous criminal charges, some of which resulted in conviction and jail time).

It is evident from those cases that the relationships between the magistrates and defendants in those cases hardly can be equated with that between Judge Wollenberg and the defendant. In *United States* v. *Mathison*, supra, 157 F.3d 548, there was no evidence to suggest that the magistrate even was aware of the defendant's criticism of him during the defendant's living trust seminar; in *United States* v. *Czuprynski*, supra, 46 F.3d 564, the culminating event in the magistrate's relationship with the defendant had occurred thirteen years before he issued the warrant; in *United States* v. *Heffington*, supra, 952 F.2d 277–80, the judge did not even represent the defendant in the previous case, but rather represented his codefendant; and in *State* v. *Mandravelis*, supra, 114 N.H. 636, the magistrate had represented the defendant in a single case that resulted in some jail time. Here, in contrast, the issuing judge's relationship

with the defendant was much more involved, as is readily apparent from the litany of facts attested in the defendant's affidavit.

That is not all, however. In addition to the personal nature of his relationship with the defendant, Judge Wollenberg had learned from the defendant just two weeks before he issued the warrant that the defendant was considering filing a legal action against every individual, including any judge, who was involved in his having to resign from the position of chief judicial marshal. The parties dispute the relevance of that fact and, in so doing, debate the significance of *People* v. *Lowenstein*, 118 Mich. App. 475, 486, 325 N.W.2d 462, leave to appeal denied, 414 Mich. 947 (1982), in which the Michigan Appellate Court held that "where the magistrate had previously prosecuted defendant *and had been sued by defendant*, a sufficient appearance of impropriety existed that required him to recuse himself from issuing the arrest warrant." (Emphasis added.) According to the defendant, the holding in that case is applicable here, and "[t]he fact that the defendant did not actually file the lawsuit by the time the warrant was actually signed is of no consequence because Judge Wollenberg was aware of this threat." The state distinguishes *Lowenstein* from the present case on the ground that Judge Wollenberg had neither prosecuted nor been sued by the defendant before he issued the search warrant. The mere threat of litigation, it argues, "was insufficient to demonstrate the type of bias necessary to establish a fourth amendment violation."

We need not determine whether the defendant's mere threat of litigation against Judge Wollenberg was sufficient to have deprived him of his status as a neutral and detached magistrate. We also need not determine whether the defendant's relationship with Judge Wollenberg, standing alone, was sufficient to have done so. Stated differently, we need not, as the state has done,

separate the allegations in analyzing Judge Wollenberg's neutrality and detachment. It is the unique confluence of factors that leads us to conclude that Judge Wollenberg did not qualify as the neutral and detached magistrate guaranteed by the fourth amendment.[8] The personal nature of Judge Wollenberg's relationship with the defendant combined with the threat of litigation, we believe, created a situation that offered a possible temptation to Judge Wollenberg as a judge or which might have led him not to hold the balance "nice, clear and true"; (internal quotation marks omitted) *Connally* v. *Georgia*, supra, 429 U.S. 250; between the state and the defendant. Again, our concern is not with the direction in which the scale had tipped, but rather that it had tipped at all. It follows that a search premised on a warrant issued by a judge who lacked the requisite neutrality and detachment "stands on no firmer ground than if there had been no warrant at all." *Coolidge* v. *New Hampshire*, supra, 403 U.S. 453. For all of the foregoing reasons, we conclude that the court improperly failed to suppress the evidence seized pursuant to the search warrant issued in this case.

The state argues that if we reverse the court's decision, we should remand the case to the trial court for a full evidentiary hearing on the grounds that "the trial court did not make the requisite findings of fact that would be necessary to establish a fourth amendment violation, and the state did not have the opportunity to cross-examine the defendant or to put on independent evidence to refute the defendant's assertions." We decline to do so. The state had an opportunity to request a hearing on the issues raised by the defendant's motion

[8] We caution that nothing in our opinion should be read to suggest that judges are never permitted to issue search warrants in situations involving courthouse employees. Our decision in this case is a narrow one, confined to the unique facts of this case, which represents "one of the rare cases in which the magistrate acted improperly." *State* v. *Walczyk*, 76 Conn. App. 169, 177, 818 A.2d 868 (2003).

when those issues were before the court, but it did not avail itself of that opportunity and, therefore, has waived its right to have such a hearing.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to suppress and for further proceedings in accordance with law.

In this opinion the other judges concurred.