# STATE OF CONNECTICUT *v.* ERIC EDMAN
## (SC 17516)

Borden, Katz, Palmer, Vertefeuille and Hauser, Js.

Argued January 16—officially released February 27, 2007

*Robert J. Scheinblum,* senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,*

state's attorney, and *Kathleen McNamara*, senior assistant state's attorney, for the appellant (state).

*Hugh F. Keefe*, with whom was *Nancy F. Myers*, for the appellee (defendant).

KATZ, J. The principal issue in the state's certified appeal is whether the unchallenged assertions by the defendant, Eric Edman, in his affidavit in support of his motion to suppress evidence seized from his home, which alleged a prior personal relationship between himself and the magistrate who had issued the search warrant, were sufficient to establish that the defendant had been denied his right to a neutral and detached magistrate, as required by the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. The trial court determined that, despite the relationship between the defendant and the issuing magistrate, the defendant's constitutional rights had not been violated and, accordingly, the court denied the defendant's motion to suppress. Thereafter, the defendant entered a conditional plea of nolo contendere to one count of possession of narcotics in violation of General Statutes § 21a-279 (a) and three counts of possession of a controlled substance in violation of § 21a-279 (c), thereby reserving the right to appeal from the denial of the motion to suppress, and the trial court rendered judgment of guilty in accordance with the plea. On appeal from that judgment, the Appellate Court determined that, "under the unique circumstances of this case, the [judge that issued the warrant] did not qualify as the neutral and detached magistrate guaranteed by the federal constitution," and, accordingly, reversed the judgment of the trial court. *State* v. *Edman*, 90 Conn. App. 820, 822, 879 A.2d 544 (2005). We affirm the Appellate Court's judgment.

The Appellate Court opinion sets forth the following undisputed facts and procedural history. "On December 21, 2001, Judge William L. Wollenberg was presented with an affidavit for a search warrant of the residence of the defendant . . . . The affidavit detailed the circumstances from which law enforcement officials had concluded that there were narcotics at that location. Finding probable cause to support a search, Judge Wollenberg issued a search and seizure warrant. The next day, police officers executed the warrant at the defendant's residence, seizing illegal narcotics and controlled substances, including OxyContin and anabolic steroids. As a result of the search, the defendant was arrested and charged with numerous drug-related offenses.

"Before trial, the defendant filed a motion to suppress the seized evidence on the ground that [t]he relationship between the defendant and . . . Judge Wollenberg . . . was such that a finding can not be made that the issuance of [the] search warrant was made by a neutral and detached magistrate. At the February 21, 2003 suppression hearing, the defendant advised the court that he intended to testify as to his relationship with Judge Wollenberg. The court asked immediately to see counsel in chambers. Upon returning to the courtroom, the court stated: [Defense counsel] had indicated he wanted testimony. We had some discussion regarding that. What the court would like to do is accept an affidavit in lieu of testimony. . . . And I will defer a decision on this particular motion until I have the affidavit in hand and we have an opportunity to then have oral argument based on the affidavit.

"On March 21, 2003, the day the suppression hearing resumed, the defendant submitted a forty-one paragraph affidavit describing his relationship with Judge Wollenberg. In that affidavit, the defendant attested that he and Judge Wollenberg had met sometime in 1996 or 1997, while the defendant was working as a [sheriff] at

the courthouse in Bristol, and that before issuing the search warrant in 2001, Judge Wollenberg had asked the defendant to help him move his office belongings on three occasions, stating on the last occasion that he [did] not trust anyone else; discussed with the defendant his personal beliefs about whether he was satisfied in his overall role and the nature of his assignment at the geographical area courthouse in New Britain and whether he was given a sufficient caseload as a criminal judge by the presiding judge; intervened on the defendant's behalf to prevent his transfer to another courthouse; endorsed the defendant's promotion to chief judicial marshal, a position that he ultimately attained; asked the defendant to resign from that position (which he did) because of a prior criminal record, insisting that it was his only option, but assisted the defendant with that predicament by discussing with him the details of [his] past conviction and possible defenses that could have been raised at that time, contacting the state board of pardons on his behalf and reviewing documentation he submitted to the board; discussed pending cases with the defendant, both in chambers and in court, even allowing him to approach in open court . . . to converse with him about various dispositions and matters in front of the court; asked the defendant, after a deputy marshal in the courthouse had been arrested, whether he knew if any sheriffs in the courthouse were breaking the law, and whether he would look around and see what [he] could find; discussed personal issues with the defendant, including issues concerning the judge's family, finances, real estate investments, health concerns, influence in the state legislature, and opposition to the judicial appointment of another judge . . . while he was on the judiciary committee; played golf with the defendant on one occasion and sat at the same table as the defendant at various dinner receptions; and learned from the defendant two weeks before he issued

the search warrant that the defendant was considering filing a legal action against every individual that was involved with [his] having to give up [his] position, including any judge as a potential defendant. The defendant further attested that when the police executed the search warrant, they informed him that it was Judge Wollenberg who had signed the warrant and that he had been sick to his stomach for having had to do so.

"After having reviewed the defendant's affidavit, the court denied the defendant's motion to suppress in an oral decision. As to the defendant's relationship with Judge Wollenberg, the court stated that there was nothing unusual about the alleged contacts between the two, given that both were employed by the judicial branch and assigned to the same courthouse. Conversations and contacts are common in such situations, the court explained, as is a marshal assisting a judge in moving personal belongings from his or her chambers. Further, the court noted, [m]uch of the more personal relationship which the defendant claim[ed] appears to have been initiated often and most often solely by the defendant.

"As to Judge Wollenberg's neutrality and detachment, the court determined that there was nothing in the record to indicate that Judge Wollenberg had a vested interest in signing the warrant. In so doing, the court expressly rejected the defendant's claim that Judge Wollenberg might have been trying to get the defendant in light of the defendant's recent prior claim to sue all people, including Judge Wollenberg, in the matter regarding his failed promotion. Indeed, the court noted that [t]he defendant, himself, claim[ed] that he sought advice from the judge on this very job situation and that [u]tilizing what [the defendant] calls a reasonable man standard, a reasonable man looking at impartiality might be forced to conclude, based on the defendant's assertions regarding his keen friendship with Judge

Wollenberg, that the judge would be incapable of finding probable cause against the defendant. The court also determined that there was nothing in the record to indicate that Judge Wollenberg had lacked the requisite objectivity and impartiality in signing the warrant. Specifically, [the court] stated: Simply because the defendant and the issuing judge knew each other, spoke to each other, even were in social situations together and had extensive contacts and conversations does not provide grounds to sustain the defendant's claim raised in this motion. In accord with its determinations, the court denied the defendant's motion to suppress." (Internal quotation marks omitted.) Id., 822–26. The trial court then accepted the defendant's conditional plea of nolo contendere and rendered judgment in accordance with the plea.

On appeal to the Appellate Court, the defendant claimed that the trial court should have suppressed the evidence seized during the search of his home because the search warrant had not been issued by a neutral and detached magistrate as required by the fourth amendment to the United States constitution. The Appellate Court agreed, concluding that it was "the unique confluence of factors" that led to its determination that Judge Wollenberg had not acted as "the neutral and detached magistrate guaranteed by the fourth amendment." Id., 834. Specifically, the Appellate Court determined that, "[t]he personal nature of Judge Wollenberg's relationship with the defendant combined with the threat of litigation . . . created a situation that offered a possible temptation to Judge Wollenberg as a judge or which might have led him not to hold the balance 'nice, clear and true' . . . between the state and the defendant." (Citation omitted.) Id. Accordingly, the Appellate Court concluded that the trial court improperly had failed to suppress the evidence seized

pursuant to the search warrant issued in the present case. Id.

The Appellate Court rejected the state's contention that, if the court were inclined to disagree with the trial court's decision denying the motion to suppress, it should remand the case to the trial court for a full evidentiary hearing because "the trial court did not make the requisite findings of fact that would be necessary to establish a fourth amendment violation, and the state did not have the opportunity to cross-examine the defendant or to put on independent evidence to refute the defendant's assertions." (Internal quotation marks omitted.) Id. The Appellate Court concluded that "[t]he state had had an opportunity to request a hearing on the issues raised by the defendant's motion when those issues were before the [trial] court, but it did not avail itself of that opportunity and, therefore, has waived its right to have such a hearing." Id., 834–35. Accordingly, the Appellate Court reversed the judgment and remanded the case to the trial court with direction to grant the motion to suppress. Id., 835.

We thereafter granted the state's petition for certification to appeal to this court, limited to the following issues: "1. Did the Appellate Court properly hold that the issuing judge was not a 'neutral and detached magistrate' under the fourth amendment to the United States constitution when he issued a search warrant for the defendant's home?" and "2. Did the Appellate Court properly remand this case to the trial court with direction to grant the motion to suppress without first holding a factual hearing?" *State* v. *Edman*, 276 Conn. 906, 884 A.2d 1028 (2005).

On appeal to this court, the state claims that the Appellate Court misapplied United States Supreme Court precedent and improperly determined that Judge Wollenberg's personal involvement with the defendant

had deprived him of the neutrality and detachment required under the fourth amendment. According to the state, the Supreme Court's jurisprudence does not establish that the absence of "*personal* bias" is a prerequisite to the issuance of a valid search warrant, and the fourth amendment is satisfied as long as there are no "*systemic* biases" in that the issuing judge (1) is not partial toward law enforcement, and (2) "performs his judicial function in a neutral and detached manner." (Emphasis in original.) Because Judge Wollenberg had no pecuniary interest in the warrant process and was independent of law enforcement, and because he scrutinized the warrant application and did not participate in the criminal investigation or execution of the warrant, the state claims that this court must conclude that he was a neutral and detached magistrate in satisfaction of the constitution when he signed the search warrant in this case. In other words, the state contends that, only if these considerations cannot be satisfied, may a reviewing court determine that the magistrate has lost his neutrality. The state also claims that, even if the personal bias of an issuing judge could violate the fourth amendment under appropriate circumstances, this is not such a case. Finally, the state contends that the Appellate Court improperly declined to remand the case to the trial court for a full evidentiary hearing at which the state could contest the allegations set forth in the defendant's affidavit.

The defendant responds that the state's view of what is required for a magistrate to lose his neutral and detached status and thereby deprive an accused of his fourth amendment rights is overly narrow and that it improperly ignores the consideration that a magistrate's personal bias may be sufficient to render the judge "unable to hold the balance between vindicating the interests of the court and the interests of the accused"; *Ungar* v. *Sarafite*, 376 U.S. 575, 588, 84 S. Ct. 841, 11

L. Ed. 2d 921 (1964); thereby leaving the search premised on the warrant "on no firmer ground than if there had been no warrant at all." *Coolidge* v. *New Hampshire*, 403 U.S. 443, 453, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). The defendant maintains that the Appellate Court properly determined that Judge Wollenberg was not a neutral and detached magistrate in the present case. Finally, the defendant contends that the Appellate Court properly concluded that the state had waived its right to have a hearing on the issues raised by the defendant's motion. We agree with the defendant and the Appellate Court that Judge Wollenberg had a personal interest sufficient to undermine his ability to act as the neutral and detached magistrate guaranteed by the fourth amendment and that the state was not entitled to an evidentiary hearing.[1]

Before turning to the merits of the state's claim, we set forth the standard of review applied to a trial court's findings and conclusions in connection with determining the validity of a search. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Nash*, 278 Conn. 620, 629, 899 A.2d 1 (2006).

[1] The defendant also claims that Judge Wollenberg's issuance of the search warrant violated the more expansive guarantees under article first, § 7, of the Connecticut constitution. Because we agree with the defendant that Judge Wollenberg did not constitute a neutral and detached magistrate under the federal constitution, we need not determine whether the Connecticut constitution affords greater protection under the specific facts of the present case. See *State* v. *Spencer*, 268 Conn. 575, 578 n.5, 848 A.2d 1183, cert. denied, 543 U.S. 957, 125 S. Ct. 409, 160 L. Ed. 2d 320 (2004).

Our cases consistently have held that both the state and federal constitution evince a preference for obtaining search warrants to protect the individual rights of our citizens. "[I]t is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (Internal quotation marks omitted.) *Mincey* v. *Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Katz* v. *United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); accord *State* v. *Lewis*, 220 Conn. 602, 609, 600 A.2d 1330 (1991). The requirement that a warrant be obtained before conducting a search "reflects the sound policy judgment that, absent exceptional circumstances, the decision to invade the privacy of an individual's personal effects should be made by a neutral magistrate . . . . The point of the [f]ourth [a]mendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (Citation omitted; internal quotation marks omitted.) *California* v. *Acevedo*, 500 U.S. 565, 586, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991), quoting *Johnson* v. *United States*, 333 U.S. 10, 13–14, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

The warrant requirement also "is intended to eliminate altogether searches not based on probable cause. The premise here is that *any* intrusion in the way of a search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity." (Emphasis in original.) *Coolidge* v. *New Hampshire*, supra, 403 U.S. 467. "Th[e] protection

[afforded by both the federal and state constitution] is particularly important where searches are concerned. Unlike a seizure, which involves state interference with a person's possessory interest, a search constitutes state interference with a person's privacy interest. . . . Although an improper seizure can be undone by returning the seized property, privacy, once invaded, cannot be restored. Thus, the invasion of privacy occasioned by an illegal search cannot be remedied satisfactorily, even if a judge subsequently determines that the search was not supported by probable cause." (Citation omitted.) *State* v. *Miller*, 29 Conn. App. 207, 220, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993). Finally, the United States Supreme Court repeatedly has emphasized that the fourth amendment's warrant clause is not mere "dead language" or a bothersome "inconvenience to be somehow weighed against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the well-intentioned but mistakenly overzealous executive officers who are a part of any system of law enforcement." (Internal quotation marks omitted.) *United States* v. *United States District Court*, 407 U.S. 297, 315–16, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972), quoting *Coolidge* v. *New Hampshire*, supra, 481.

Concerning the core issue in this case, we cannot improve upon either the language or reasoning of the Appellate Court's opinion as it relates to the three seminal cases by the United States Supreme Court "involving the attributes and conduct of persons who do not qualify as neutral and detached magistrates for purposes of the fourth amendment: *Coolidge* v. *New Hampshire*, [supra, 403 U.S. 443]; *Connally* v. *Georgia*, 429 U.S. 245, 97 S. Ct. 546, 50 L. Ed. 2d 444 (1977); and *Lo-Ji Sales, Inc.* v. *New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979). In *Coolidge*, the probable cause determi-

nation was made by the state attorney general, who was actively in charge of the investigation and later was to be chief prosecutor at the trial. *Coolidge* v. *New Hampshire*, supra, 450. The state argued that the attorney general, who was authorized as a justice of the peace to issue warrants, had in fact acted as a neutral and detached magistrate. Id. According to the court, there could hardly be a more appropriate setting than this for a per se rule of disqualification rather than a case-by-case evaluation of all the circumstances. . . . [T]he whole point of the basic rule so well expressed by Mr. Justice Jackson [in *Johnson* v. *United States*, supra, 333 U.S. 13–14] is that prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the competitive enterprise that must rightly engage their single-minded attention. . . . [*Coolidge* v. *New Hampshire*, supra, 450]. The court held, therefore, that the seizure and search . . . [could not] constitutionally rest upon the warrant issued by the state official who was the chief investigator and prosecutor in [the] case. Id., 453. . . .

"From the other two decisions, we glean that a magistrate's neutrality and detachment may be compromised in one of two ways—either (1) by his or her conduct or (2) by an indicia of partiality. In *Lo-Ji Sales, Inc.* v. *New York*, supra, 442 U.S. 319, it was the magistrate's conduct that created the appearance that he was not neutral and detached. In that case, a town justice issued a search warrant that authorized the search of an adult bookstore and the seizure of two specific obscene films. Id., 321. The warrant did not specify any other items to be seized, but authorized the seizure of any items that the town justice, himself, might find obscene upon examination at the bookstore. Id. The town justice then accompanied law enforcement officials to the store and directed the seizure of various items that he deemed

obscene, items that subsequently were added to the original warrant. Id., 322–24. According to the court, [t]he [t]own [j]ustice did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure. Id., 326. [The court] explained: We need not question the subjective belief of the [t]own [j]ustice in the propriety of his actions, but the objective facts of record manifest an erosion of whatever neutral and detached posture existed at the outset. He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer. Id., 326–27. Hence, *Lo-Ji Sales, Inc.*, demonstrates that a judicial officer, even if initially independent of the law enforcement process, can lose that independence through his [or her] own actions. C. Whitebread & C. Slobogin, Criminal Procedure: An Analysis of Cases and Concepts (3d Ed. 1993) § 5.02, p. 140. . . .

"[Finally, in] *Connally* v. *Georgia,* supra, 429 U.S. 246, a search warrant was issued by an unsalaried justice of the peace who was paid a $5 fee for each search warrant that he issued, but was paid nothing for each application that he reviewed and subsequently denied. The court held that the issuance of the search warrant under those circumstances violated the fourth amendment, stating: His financial welfare . . . is enhanced by positive action and is not enhanced by negative action. *The situation . . . is one which offers a possible temptation to the average man as a judge . . . or which might lead him not to hold the balance nice, clear and true between the [s]tate and the accused.* It is, in other words, another situation where the defendant is subjected to what surely is judicial action by an officer of a court who has a direct, personal, substantial, pecuniary

interest in his conclusion to issue or to deny the warrant. . . . Id., 250." (Emphasis in original; internal quotation marks omitted.) *State* v. *Edman*, supra, 90 Conn. App. 827–30.

In addition to the Supreme Court, we note that other courts have wrestled with claims of magistrates abandoning their judicial role. Claims that a magistrate has run afoul of the neutrality requirement have been raised in a variety of contexts. Some have involved the *Connally*-type inherent conflict of interest based on status. See, e.g., *United States* v. *Heffington*, 952 F.2d 275, 277–80 (9th Cir. 1991) (concluding that issuing magistrate was sufficiently neutral and detached despite having been defense counsel in earlier case in which defendant was codefendant); *Commonwealth* v. *Brandenburg*, 114 S.W.3d 830, 833 (Ky. 2003) (concluding that trial judge who had signed search warrant was not neutral and detached because judge's husband was employed by county as victim advocate); *People* v. *Lowenstein*, 118 Mich. App. 475, 486, 325 N.W.2d 462 (concluding that "where the magistrate had previously prosecuted [the] defendant and had been sued by [the] defendant, a sufficient appearance of impropriety existed that required him to recuse himself from issuing the arrest warrant"), leave to appeal denied, 414 Mich. 947 (1982); *State ex rel. Brown* v. *Dietrick*, 191 W. Va. 169, 176, 444 S.E.2d 47 (1994) (concluding that no per se rule of partiality would void search warrant issued by magistrate who was married to chief of police if one of his officers, rather than police chief himself, had procured warrant). Other claims have involved a question of neutrality based on conduct similar to that in *Lo-Ji Sales, Inc.* See, e.g., *United States* v. *Dorman*, 657 F. Sup. 511, 514 (M.D.N.C. 1987) (concluding that magistrate did not abrogate her constitutional obligation to be neutral and detached even though she "summon[ed] . . . a detective to assist in the investigation

of a matter currently before [her]"), aff'd, 846 F.2d 74 (4th Cir. 1988); *United States* v. *Evans*, 629 F. Sup. 1544, 1554 (D. Conn. 1986) (holding that magistrate who "suggested that the warrant application and warrant itself include [certain] items" was not so "involve[d] in the application for the search warrant as to disqualify [him] on grounds that he lacked the requisite neutrality"); *Grimes* v. *Superior Court*, 120 Cal. App. 3d 582, 586–87, 174 Cal. Rptr. 623 (1981) (concluding that issuing magistrate was not neutral and detached because he owned and leased out premises where he suspected lessee's marijuana cultivation, had investigated suspicion by visiting premises and taking photographs, and was listed in police officer's affidavit as official source of information that triggered investigation).

In the present case, we are not dealing with a claim of an inherent interest or bias based purely on status. Rather, we are confronted with a situation implicating the fundamental principle that "[w]hether a magistrate was neutral and detached in any particular case is necessarily an individualized and contextual inquiry. [In that situation] [c]ourts must focus on the specific circumstances surrounding the issuance of the warrant and decide whether the magistrate 'manifest[ed] that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure.' [*Lo-Ji Sales, Inc.* v. *New York*, supra, 442 U.S. 326]." *United States* v. *Ramirez*, 63 F.3d 937, 941 (10th Cir. 1995). As the Appellate Court recognized, "[s]ometimes [as in the present case] the claim is that the magistrate, while not having a financial interest in the case, had a sufficient personal interest that he cannot be deemed to have been impartial. . . . 2 W. LaFave, [Search and Seizure (4th Ed. 2004)] § 4.2 (b), p. 488 . . . . As such, the possible temptation standard in *Connally* is applicable to a situation in which the magistrate has a sufficient personal interest in the

case because such a situation is one which offers a possible temptation to the average man as a judge . . . or which might lead him not to hold the balance nice, clear and true between the [s]tate and the accused. . . . *Connally* v. *Georgia*, supra, 429 U.S. 250." (Citations omitted; internal quotation marks omitted.) *State* v. *Edman*, supra, 90 Conn. App. 830–31. Accordingly, we reject the state's contention that, because Judge Wollenberg was independent of law enforcement, and because he did not participate in the criminal investigation or execution of the warrant, we *must* conclude that he was a neutral and detached magistrate in satisfaction of the fourth amendment when he signed the search warrant in this case. The cases do not dictate such a myopic approach to this question, and, indeed, they confirm otherwise.

In rejecting the state's view that the only type of partiality prohibited by the fourth amendment is partiality toward law enforcement, we acknowledge, as the cases demonstrate, that courts cannot define with precision under what circumstances a judge will be deemed stripped of his or her status as "neutral" or "impartial." That is because "[t]he test is not [only] whether or not actual bias exists but also whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused. *Ungar* v. *Sarafite*, [supra, 376 U.S. 588]. In fact, even though a judge personally believes himself to be unprejudiced, unbiased and impartial, he should nevertheless certify his disqualification where there are circumstances of such a nature to cause doubt as to his partiality, bias or prejudice. *Merritt* v. *Hunter*, [575 P.2d 623, 624 (Okla. 1978)]." *People* v. *Lowenstein*, supra, 118 Mich. App. 482. In other words bias that has constitutional significance is not the magistrate's *subjective, unilateral* perception; it is the *objective* appearance

that arises from circumstances that would offer a temptation to the average person as an otherwise neutral adjudicator, thereby creating a constitutionally impermissible appearance of bias.

Having concluded that we properly may consider whether Judge Wollenberg's personal interest in the case was sufficient to have deprived him of his status as a neutral and detached magistrate, we return to the specific facts upon which the trial court made its legal determination. As the Appellate Court articulated, "the [trial] court determined [that Judge Wollenberg had a sufficient personal interest that he cannot be deemed to have been impartial] when it stated in its oral decision that [u]tilizing what [the defendant] calls a reasonable man standard, a reasonable man looking at impartiality might be forced to conclude, based on the defendant's assertions regarding his keen friendship with Judge Wollenberg, that the judge would be incapable of finding probable cause against the defendant. The state did likewise by stating in its brief [to the Appellate Court] that if anything, based on the friendship alleged in the affidavit, Judge Wollenberg would have had more of a stake in assuring either that the search warrant not issue or that it was valid and supported by ample probable cause. . . . By making those statements, the court and the state acknowledged that an inherent temptation existed for Judge Wollenberg to treat the case differently from any other case. Whether that temptation was to tip the scale in one direction or the other, the balance could not remain nice, clear and true between the [s]tate and the accused. . . . Moreover, having what the state described as a stake in the matter cuts against the very grain of the fourth amendment notion of neutrality and detachment."[2] (Citation omitted; internal quotation

[2] The state disagrees that Judge Wollenberg's personal interest in the case was sufficient to have deprived him of his status as a neutral and detached magistrate and cites to this court many of the same cases it had relied on in the Appellate Court in support of its claim. We agree with the Appellate Court's conclusion "that the relationships between the magistrates and

marks omitted.) *State* v. *Edman*, supra, 90 Conn. App. 831.

Additionally, like the Appellate Court, "[w]e need not determine whether the defendant's mere threat of litigation against Judge Wollenberg was sufficient to have deprived him of his status as a neutral and detached magistrate. We also need not determine whether the defendant's relationship with Judge Wollenberg, standing alone, was sufficient to have done so. Stated differently, we need not . . . separate the allegations in analyzing Judge Wollenberg's neutrality and detachment. It is the unique confluence of factors [of Judge Wollenberg's personal relationship with the defendant combined with the threat of litigation] that leads us to conclude that Judge Wollenberg did not qualify as the neutral and detached magistrate guaranteed by the fourth amendment." Id., 833–34.

We appreciate that we must exercise a measure of caution before concluding that appearances of partiality have risen to the level of constitutional error; see *Aetna Life Ins. Co.* v. *Lavoie*, 475 U.S. 813, 820, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986) ("[m]ost matters relating to judicial disqualification [do] not rise to a constitutional level" [internal quotation marks omitted]); and that there is no bright-line criterion for determining whether an appearance of partiality has, in fact, developed into a constitutional defect. Additionally, we recognize that the fourth amendment does not require magistrates "to maintain Sphinx-like inscrutability in passing on warrant applications . . . ." *United States* v. *Levasseur*, 699 F. Sup. 965, 988 (D. Mass.), rev'd in part on other grounds, 846 F.2d 786 (1st Cir. 1988).

Nevertheless, we must be mindful that "[d]etachment and neutrality are the essence of judicial behavior. In

defendants in those cases hardly can be equated with that between Judge Wollenberg and the defendant." *State* v. *Edman*, supra, 90 Conn. App. 832.

each case within his or her jurisdiction, the judge is required to find the facts fairly and impartially, to identify the applicable rule of law by reference to his education, training and experience, and finally to apply the rule to the facts and achieve a result. This we call an adjudication. These things each judge . . . must do without fear or favor, letting the chips fall where they may.

"There are good reasons why our . . . judges must regard scrupulously the nature of their office. In the first place, most of our citizens (including law enforcement officers) have their primary, if not only, direct contact with the law through the office of the . . . judge. . . . The perception of justice of most of our citizens is forged out of their experiences with our . . . judges. If our . . . judges do not behave with judicial temperament and perform their duties by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the judicial process.

"Second, in the context of this case, it is the . . . judge who has the front line responsibility for translating into a living and breathing reality the right of citizens to be secure from unreasonable search and seizures and from issuance of search warrants except upon probable cause. These are rights secured by the [f]ourth [a]mendment to the [c]onstitution of the United States . . . . As such they are fundamental rights. Our people will little understand or enjoy these rights except they be respected by our . . . judges. As a practical matter, no exclusionary rule or other remedial device can secure vindication of [f]ourth [a]mendment . . . rights as effectively and efficiently may the . . . judges of this state, if they will only do their duty.

"Finally, the application for a search warrant is one of the few instances in our judicial system where judges

are authorized to make adjudications without hearing from the party affected. Application for a search warrant is made by a law enforcement officer under circumstances where it is wholly impracticable to afford the party to be searched an opportunity to present his case to the effect that there may be no probable cause. Because of the ex parte nature of the proceedings, it is all the more important that our . . . judges do their duty consistent with the three steps of the process of adjudication described above. . . .

"Little expertise in the law is required for one to know that the title 'judge' connotes neutrality and impartiality. A high school civics student knows that a judge by the nature of his office may not act out of favoritism or partiality toward one party or the other. Whatever prerogative other public officials may have to help one interest group or another, detachment is demanded of our judges.

"When a person assumes the office of . . . judge in this state, he or she surrenders the right to favor law enforcement officials, those criminally accused, collection agencies, or anyone else. When such a person takes the oath of office, he or she yields the prerogative of executing the responsibilities of the office on any basis other than the fair and impartial application of the law to the facts. The preservation of the rule of law as our last best hope for the just ordering of our society requires nothing less than an insistence by this [c]ourt that our . . . judges be in fact what they are in name: judges." (Citation omitted.) *McCommon* v. *State*, 467 So. 2d 940, 944–45 (Miss.) (Robertson, J., concurring), cert. denied, 474 U.S. 984, 106 S. Ct. 393, 88 L. Ed. 2d 345 (1985).

Therefore, we conclude, in answer to the first certified question, that the Appellate Court properly determined that the defendant had been deprived of the right

to a neutral and detached magistrate. Finally, we briefly note, in answer to the second certified question, that, upon reaching its conclusion, the Appellate Court properly rejected the state's contention that it was entitled to have the case remanded to the trial court for a full evidentiary hearing because the trial court did not make the requisite findings of fact that would be necessary to establish a fourth amendment violation and that the state did not have the opportunity to cross-examine the defendant or to put on independent evidence to refute the assertions in his affidavit. Like the Appellate Court, we decline to afford the state a second opportunity to contest the defendant's affidavit in support of his motion to suppress, which the trial court accepted as true and on which the trial court's legal determinations were premised, given the absence of anything in the record to demonstrate that the state did not acquiesce to the truth of the matters therein.[3] Having waived its right to challenge the nature of the proceedings or the veracity of the affidavit, as well as the opportunity to present either a claim as to why it should be able to call Judge Wollenberg as a witness or an offer of proof as to what Judge Wollenberg would testify to if called, the state has relinquished the opportunity for an evidentiary hearing.

---

[3] At the February 21, 2003 suppression hearing, when the defendant had indicated that he planned to testify, the trial court informed the parties that it would accept the defendant's affidavit in lieu of testimony. The state did not indicate that it wanted to question the defendant regarding the allegations in his affidavit, that it hoped to call Judge Wollenberg to testify or even that it would seek the opportunity to call him to testify should the need arise. See *State* v. *Zarick*, 227 Conn. 207, 217, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993) (defendant's evidence regarding claim of judicial misconduct did not justify "extraordinary remedy" of calling judge as witness); *Gold* v. *Warden*, 222 Conn. 312, 320, 610 A.2d 1153 (1992) (judge may be called to testify upon showing of "compelling need"). On March 21, 2003, the day of the suppression hearing, when the defendant submitted his forty-one paragraph affidavit describing his relationship with Judge Wollenberg, the state did not challenge the trial court's decision to accept the truth of the allegations contained therein.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.