PEOPLE v PAYNE

Docket No. 74429. Argued November 14, 1985 (Calendar No. 16).—
Decided December 30, 1985. Released February 18, 1986. Certio-
rari denied by the Supreme Court of the United States on June
30, 1986, 478 US —; 92 L Ed 2d 713 (1986).

Richard D. Payne was charged in the Midland Circuit Court with
two counts of unlawfully driving away a vehicle and two counts
of receiving and concealing stolen property. The court, Tyrone
Gillespie, J., granted the defendant's motion to suppress evi-
dence seized pursuant to a search warrant issued by a district
court magistrate who was also a deputy sheriff on the ground
that the magistrate's dual status failed to satisfy the appear-
ance of justice. The Court of Appeals, J. H. GILLIS, P.J., and
SHEPHERD and J. J. KELLEY, JJ., reversed in an opinion per
curiam (Docket No. 72798). The defendant appeals.

In an opinion by Justice RYAN, joined by Chief Justice
WILLIAMS and Justices LEVIN, BRICKLEY, CAVANAGH, and RILEY,
the Supreme Court *held:*

A district court magistrate who was also a deputy sheriff was
incapable of issuing a valid search warrant. His status as a
deputy sheriff rendered him unable to satisfy the constitutional
requirements that probable cause to issue the warrant be
determined by a neutral and detached magistrate and that the
exercise of judicial power not be made by a person holding an
office in the executive branch of government.

Reversed.

Justice BOYLE, dissenting, stated that on the record there is
no basis to find that the magistrate's neutrality was impeached.
Other than his courtroom duties, he was a deputy sheriff in
name only. He had no active involvement in criminal investiga-
tion, was removed from the prosecution and the police, and was
subject to the authority of the district judge.

134 Mich App 68; 350 NW2d 835 (1984) reversed.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Gerald L. White,* Prose-
cuting Attorney, and *Richard E. Priehs,* Assistant
Prosecuting Attorney, for the people.

*Durance & Rhead* (by *Robert J. Rhead*) for the defendant.

RYAN, J. The issue in this case is whether a valid search warrant may be issued by a district court magistrate who is also a deputy sheriff. The circuit court concluded that the warrant was invalid, but the Court of Appeals reversed. We agree with the circuit court and reverse the decision of the Court of Appeals.

I

The defendant is charged in a four-count information with two counts of unlawfully driving away an automobile[1] and two counts of receiving and concealing stolen property.[2] Two vehicles are involved, with alternate charges of UDAA and receiving and concealing as to each. The evidence against the defendant includes a number of items seized from his parents' home pursuant to a search warrant issued by 75th District Court Magistrate William P. Mitchell. The defendant filed a motion to suppress these items on the ground that, in addition to his role as magistrate, Mr. Mitchell was a deputy sheriff. There was an evidentiary hearing at which Mr. Mitchell testified about his duties and his several roles as court officer, deputy court administrator, magistrate, and deputy sheriff.

An explanation of Mr. Mitchell's various roles can be found in the settled concise statement of facts and proceedings certified by the circuit court:

> William P. Mitchell has been deputy court administrator and court officer for the 75th District

[1] MCL 750.413; MSA 28.645.
[2] MCL 750.535; MSA 28.803.

Court of Midland County since approximately January 1, 1969. In November of 1979 he assumed the additional responsibilities of magistrate.

Since January, 1969, William P. Mitchell has been a duly sworn member of the Midland County Sheriff's Department, having full police powers. He retains that status, as court officer, to occasionally transport prisoners and be capable of keeping order in the courtroom including his power to arrest.

Mr. Mitchell has also periodically attended monthly meetings of the Midland County Reserve Deputies in order to receive training. Since becoming magistrate he has not participated in any criminal investigation nor worked road patrol.

Mr. Mitchell did not know the defendant nor any member of defendant's family where the search warrant was executed and accordingly, no claim of personal bias has been argued.

Furthermore, there is no contest regarding probable cause for the search warrant to issue nor the magistrate's ability to determine probable cause.

After initially denying the motion, the circuit court granted the motion to suppress, concluding that while no actual impropriety by Mr. Mitchell had been alleged or shown

[t]he law is clear that any current connection with · a magistrate and law enforcement fails to satisfy the appearance of justice.

The court entered an order dated August 16, 1983, suppressing the evidence seized pursuant to the warrant.

The prosecutor filed an application for leave to appeal to the Court of Appeals, and the application was granted. Throughout the case, the defendant has relied on *People v Lowenstein,* 118 Mich App 475; 325 NW2d 462 (1982). In *Lowenstein,* the Court of Appeals upheld the trial court's suppres-

sion of an arrest warrant on the grounds that the issuing magistrate was not "neutral and detached." The magistrate who issued the warrant for defendant Lowenstein's arrest was a former prosecuting attorney. During his tenure as prosecutor, the magistrate prosecuted the defendant on charges unrelated to the contested arrest warrant and was personally acquainted with the defendant. Prior to the issuance of the warrant, defendant Lowenstein had named the magistrate as a defendant in a multi-million dollar civil suit. In affirming the suppression of the arrest warrant, the Court of Appeals emphasized the appearance of impropriety that the magistrate created when he issued an arrest warrant for a person who previously had unsuccessfully, and perhaps frivolously, sued him.[3]

In this case, the Court of Appeals reasoned that the nature of the magistrate's law enforcement activities was critical to the result in *Lowenstein* and reversed, concluding:

> We hold that a mere affiliation, without more, between a magistrate and a law enforcement group is insufficient to support a finding that the magistrate is not neutral and detached. Where, as here, an affiliation exists but there is no active pursuit by the magistrate of a law enforcement career, the magistrate is sufficiently neutral and detached for the purpose of issuing warrants. [*Peo-*

---

[3] In *Lowenstein,* p 483, the Court said:

"Certain situations have been identified as requiring dismissal when the appearance of impropriety is too great even though no actual prejudice is shown. First, '[a]n official associated in any way with the prosecution of alleged offenders, because of his allegiance to law enforcement, cannot be allowed to be placed in a position requiring the impartial judgment necessary to shield the citizen from unwarranted intrusions into his privacy.' *State v Ruotolo,* 52 NJ 508, 512; 247 A2d 1, 3 (1968). In other words, an otherwise duly appointed magistrate who just happens to be connected with law enforcement may not constitutionally issue warrants. *Vance v North Carolina,* 432 F2d 984 (CA 4, 1970)."

*ple v Payne,* 134 Mich App 68, 72; 350 NW2d 835
(1984).]

## II

The Fourth Amendment to the United States
Constitution provides:

> The right of the people to be secure in their
> persons, houses, papers, and effects, against unrea-
> sonable searches and seizures, shall not be vio-
> lated, and no Warrants shall issue, but upon prob-
> able cause, supported by Oath or affirmation, and
> particularly describing the place to be searched,
> and the persons or things to be seized.

The Fourth Amendment

> was a reaction to the evils of the use of the
> general warrant in England and the writs of assis-
> tance in the Colonies, and was intended to protect
> against invasions of "the sanctity of a man's home
> and privacies of life," from searches under indiscri-
> minate, general authority. Protection of these in-
> terests was assured by prohibiting all "unreason-
> able" searches and seizures, and by requiring the
> use of warrants, which particularly describe "the
> place to be searched, and the persons or things to
> be seized," thereby interposing "a magistrate be-
> tween the citizen and the police." [*Warden, Mary-
> land Penitentiary v Hayden,* 387 US 294, 301; 87 S
> Ct 1642; 18 L Ed 2d 782 (1967).]

Absent exceptional circumstances, the Fourth
Amendment mandates that an "independent judi-
cial officer," not the police, determine "whether
liberty or privacy is to be invaded." *Jones v United
States,* 362 US 257, 270-271; 80 S Ct 725; 4 L Ed 2d
697; 78 ALR2d 233 (1960).

In *Johnson v United States,* 333 US 10; 68 S Ct
367; 92 L Ed 436 (1948), the Supreme Court stated

that probable cause must ordinarily be determined by a "neutral and detached magistrate":

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent. [333 US 13-14.]

A search warrant is invalid if the issuing magistrate also was an active participant in the investigation or prosecution of the underlying crime. *Coolidge v New Hampshire,* 403 US 443, 453; 91 S Ct 2022; 29 L Ed 2d 564, 575 (1971); *Lo-Ji Sales, Inc v New York,* 442 US 319; 99 S Ct 2319; 60 L Ed 2d 920 (1979). In *Coolidge,* the attorney general who issued the warrant participated in the investigation and later prosecuted the case. The Court stated that "there could hardly be a more appropriate setting than this for a per se rule of disqualification rather than a case-by-case evaluation of all the circumstances." 403 US 450.

The United States Supreme Court has not decided whether mere status as a law enforcement official, in and of itself, renders a magistrate incapable of being "neutral and detached." The Court

has stated, in the process of defining "neutral and detached magistrate," that "someone independent of the police and prosecution must determine probable cause. . . . Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." *Shadwick v Tampa,* 407 US 345, 348, 350-351; 92 S Ct 2119; 32 L Ed 2d 783 (1972).

Our review of decisions in the state and federal courts reveals that Georgia is the only state in which a recorded appellate decision has addressed the specific issue before us today.[4] In *Vaughn v State,* 160 Ga App 283, 284; 287 SE2d 277 (1981), the Georgia Court of Appeals held that a justice of the peace who was also a sworn and bonded, albeit inactive, deputy sheriff was not a "neutral and detached magistrate" under the Fourth Amendment.

The judge's dual status " 'per se' disqualified [him] as a neutral and detached magistrate. *Coolidge v New Hampshire,* 403 US 450." The Georgia court's conclusion relied in part upon the separation of powers provision of the Georgia Constitution. The court stated that the judge was improperly authorized to exercise both executive and judicial functions. Such dual status, the court said, "negates any possibility of a finding that Judge Broom was a neutral and detached magistrate." 160 Ga App 284.

## III

While the decision of the Georgia court is of no precedential force here, we believe its reasoning is sound.

---

[4] The Ohio appellate decision of *State v Furry,* 31 Ohio App 2d 107; 286 NE2d 301 (1971), is inapposite. The court failed to cite *Coolidge,* although it had been decided earlier that year.

Article 3, § 2 of the Michigan Constitution provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

In issuing the search warrant in this case, Magistrate Mitchell exercised judicial power while holding the office of deputy sheriff in the executive branch. Concerning the exercise of judicial powers by an official of the executive department, the United States Supreme Court has said:

> The Fourth Amendment does not contemplate the executive officers of Government as neutral and disinterested magistrates. Their duty and responsibility are to enforce the laws, to investigate, and to prosecute. But those charged with this investigative and prosecutorial duty should not be the sole judges of when to utilize constitutionally sensitive means in pursuing their tasks.
>
> * * *
>
> The Fourth Amendment contemplates a prior judicial judgment, not the risk that executive discretion may be reasonably exercised. This judicial role accords with our basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government. [*United States v United States Dist Court,* 407 US 297, 317; 92 S Ct 2125; 32 L Ed 2d 752 (1972).]

We think that Magistrate Mitchell's status as a deputy sheriff rendered him incapable of satisfying the "neutral and detached" requirement of the Fourth Amendment and its counterpart provision

in art 3, § 2 of the Michigan Constitution. The probable cause determination must be made by a person whose loyalty is to the judiciary alone, unfettered by professional commitment, and therefore loyalty, to the law enforcement arm of the executive branch.

We disagree with the prosecutor's argument that active involvement in "ferreting out crime either from an investigatory or prosecutorial standpoint" is required before a magistrate's issuance of a warrant should be struck down.

The very fact that Magistrate Mitchell is a deputy sheriff establishes that his professional loyalty is divided. He is bound by oath to faithfully carry out the duties of both a judicial officer and a police officer. While Magistrate Mitchell's professional loyalties to the two offices need not always be at odds, they are very much in conflict when he is asked by law enforcement officials to issue a judicial writ such as a search warrant. In such circumstances, he cannot, perforce, be a "neutral and detached" magistrate. He is, by the terms of his law enforcement oath, "non-neutral" toward law enforcement interests, and he is very much "attached" to his office of deputy sheriff. Our holding is unaffected by the lack of proof of any actual pro-police bias on the part of Magistrate Mitchell. The issue does not turn upon a contest of proof of Magistrate Mitchell's deeper or more profound commitment as judge or as part-time deputy sheriff. As Mr. Justice Bradley stated over a century ago in *Boyd v United States,* 116 US 616, 635; 6 S Ct 524; 29 L Ed 746 (1886):

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely by silent approaches and

slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.

We reverse the judgment of the Court of Appeals and reinstate the circuit court's order suppressing the evidence seized pursuant to the warrant.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, and RILEY, JJ., concurred with RYAN, J.

BOYLE, J. I respectfully dissent.

In *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), the United States Supreme Court held that the Fourth Amendment required that a State Attorney General be disqualified per se from issuing a search warrant. The Court found that the determination of probable cause made by the chief government enforcement agent of the state "who was actively in charge of the investigation and later was to be chief prosecutor at the trial," *id.* at 450, violated the constitutional requirement that probable cause be determined by a neutral and detached magistrate.

The following year, *Shadwick v City of Tampa,* 407 US 345; 92 S Ct 2119; 32 L Ed 2d 783 (1972), upheld the authority of a municipal court clerk to issue arrest warrants on charges of violations of municipal ordinances. The Court rejected the claim that because clerks were appointed by the

city clerk, "an executive official," *id.* at 348, they
were not sufficiently independent to be judicial
officers.

While the Court stated that, "[w]hatever else
neutrality and detachment might entail, it is clear
that they require severance and disengagement
from activities of law enforcement," *id.* at 350, the
Court expressly rejected an invalidation per se of a
state or local warrant system "on the ground that
the issuing magistrate is not a lawyer or judge."
*Id.* at 352. Instead, the Court noted that there was
no showing on the record of affiliation with prose-
cutors or police, of partiality, or of any connection
with law enforcement activity "which would dis-
tort the independent judgment the Fourth Amend-
ment requires." *Id.* at 350-351. The Court observed
that judges were likewise subjected to appointment
or election and that most were dependent for their
salary level upon the legislative branch. The Court
concluded:

> The clerk's neutrality has not been impeached;
> he is removed from prosecutor or police and works
> within the judicial branch subject to the supervi-
> sion of the municipal court judge. [*Id.* at 351.] [1]

I am unable to agree that the Fourth Amend-
ment requires the disqualification of William
Mitchell per se and the invalidation of the war-
rant.

The record establishes only that Mitchell was
deputized as a deputy or reserve sheriff and occa-
sionally attended meetings of the reserves. The
magistrate found that he had not had any active

---

[1] The Court appears to have also rejected disqualification per se in
*Lo-Ji Sales, Inc v New York,* 442 US 319, 327; 99 S Ct 2319; 60 L Ed
2d 920 (1979), where it concluded from the "objective facts of record,"
that a local justice's involvement in a search party eroded whatever
neutral and detached posture existed at the outset.

involvement in criminal investigation or road patrol since becoming a magistrate in 1969.

On this record, in other than his courtroom duties, Mr. Williams is a deputy in name only. As the Court cautioned in *Shadwick, supra* at 350, "The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party." Like the clerk in *Shadwick,* Mr. Mitchell is removed from the prosecution and the police. He works within the judicial branch, subject to the authority of the district judge. In short, on this record, there is no basis to find that the magistrate's neutrality was impeached. I would affirm the judgment of the Court of Appeals.